UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
HECTOR DEJESUS,

      Plaintiff,

 -against-

JUSTIN ROGOZINSKI, in his individual capacity, and THE CITY OF NEW YORK,

      Defendants.

Demand for Jury Trial
---------------------------------------------------------------X

**12 cv9379**

**FIRST AMENDED COMPLAINT**

  Plaintiff Hector DeJesus, by and through his attorneys LeBow & Associates, PLLC, complains of the Defendants, and each of them, as follows:

## I. PRELIMINARY STATEMENT

  Plaintiff Hector DeJesus brings this action under 42 USC §§1983 and 1988 to redress Defendants' violations of the rights and immunities secured to Plaintiff by the United States Constitution. Defendant Rogozinski is a New York City police officer who at all times mentioned herein was acting under color of state law. DeJesus was driving with his friend in his car, when Rogozinski and his partner stopped them, and conducted searches that involved Rogozinski pulling down DeJesus' pants, reaching into his underwear, and feeling his crotch, all in a public place, thereby violating his Fourth Amendment rights against excessive and unreasonable searches. Plaintiff asserts a claim against the City of New York based upon entity liability, and allege that the City of New York maintained certain policies, customs, and practices regarding the hiring, training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of Plaintiff and others, and that directly

1

and proximately caused the violation of Plaintiff's Fourth Amendment rights.  Plaintiff seeks compensatory damages from Rogozinski and the City of New York, and punitive damages from Rogozinski.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the federal civil rights claims asserted herein against Defendants Rogozinski and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3).  Venue in this district is proper because a substantial part of the events giving rise to the claims described herein occurred in the Southern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiff Hector DeJesus was a resident of the Bronx, New York, residing at 2600 Netherland Avenue, #2209, Bronx, NY 10463, and a citizen of the United States.

3. At all times relevant herein, Defendant Justin Rogozinski was a police officer employed by the New York City Police Department ("NYPD"), and assigned to the 25th Precinct in the East Harlem neighborhood of Manhattan.

4. At all times relevant herein, The City of New York was a municipal corporation existing under the laws of the State of New York.  As such, it maintains a police department, and has enacted rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline and conduct of the officers it employs.

## IV. STATEMENT OF FACTS

5. At all times relevant herein, Plaintiff Hector DeJesus was a resident of the Bronx, New York, residing at 2600 Netherland Avenue, #2209, Bronx, NY 10463.

6. At all times relevant herein, Defendant Justin Rogozinski was an NYPD officer assigned to the 25th Precinct.

7. At all times relevant herein, Sgt. Javad Valad was an NYPD officer assigned to the 25th Precinct.

8. On or about June 30, 2011 at around 9:55 PM, DeJesus and his friend Anthony Vasquez were in a car heading west on East 117th Street between Madison and 5th Avenues. DeJesus was driving and Vasquez was in the passenger seat.

9. On information and belief, Rogozinski and Valad pulled over DeJesus' car.

10. On information and belief, Rogozinski and Valad approached DeJesus' vehicle using their flashlights.

11. On information and belief, Rogozinski and Valad asked DeJesus and Vasquez where they were coming from and where they were headed.

12. On information and belief, Rogozinski and Valad did not tell DeJesus and Vasquez why they were being stopped.

13. On information and belief, the officers requested that Vasquez step outside of the vehicle and place his hands on the hood.

14. On information and belief, the officers asked Vasquez whether he had any weapons or drugs in his possession, he said he did not, and then Valad began to search him.

15. On information and belief, Valad then asked Vasquez to sit inside the vehicle, and asked DeJesus to step outside the vehicle and put his hands on the hood.

16. On information and belief, the officers asked DeJesus whether he had any weapons or drugs in his possession, and he said he did not.

17. On information and belief, Rogozinski then began to search DeJesus.

18. On information and belief, Rogozinski lowered DeJesus pants, despite the fact that they were on a public street.

19. On information and belief, Rogozinski was feeling inside DeJesus' underwear and felt his crotch area, causing him both extreme discomfort and extreme anxiety.

20. On information and belief, Rogozinski asked DeJesus to sit back in the vehicle.

21. On information and belief, Valad asked if there were any drugs or weapons in the car, DeJesus said there were not, and Valad continued to inspect the vehicle with his flashlight.

22. On information and belief, Rogozinski asked to see DeJesus' license, registration and insurance card, and DeJesus complied.

23. On information and belief, the officers then returned to their vehicle.

24. On information and belief, a few minutes later the officers returned to DeJesus' car.

25. On information and belief, Rogozinski informed DeJesus that he was receiving a ticket for making a U-Turn while there was oncoming traffic on 116th Street, which was not accurate.  However, because of DeJesus' shock from the search, and his general fear of what Rogozinski might do next, DeJesus did not object.

26. On or about September 23, 2011, at the Department of Motor Vehicles' hearing over the ticket DeJesus received from Rogozinski, the court heard Rogozinski's testimony, and then ruled in DeJesus' favor.

## V. FIRST CAUSE OF ACTION - CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
**(Against Defendant Rogozinski)**

27. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 26 of this Complaint with the same force and effect as though fully set forth herein.

28. As a result of the actions of Defendant Rogozinski, which began on or about June 30, 2011, DeJesus was deprived of his rights under the United States Constitution and federal civil rights law. Plaintiff's rights are secured by provisions of the Fourth Amendment and 42 U.S.C. §1983.

29. The actions of Defendant Rogozinski were committed under the color of law and were intentional and willful.

30. Rogozinski's search of DeJesus, involving reaching into his underwear in a public place, feeling his crotch, and pulling his pants down in a public place, was excessive and unreasonable and therefore violated DeJesus' Fourth Amendment rights.

31. The actions of Defendant Rogozinski amounted to an excessive search under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

32. As a direct and proximate result of that excessive search, Plaintiff experienced an extreme degree of degradation, anxiety, and discomfort, and continues to experience great mental anguish, emotional distress, and post-traumatic stress.

## VI. SECOND CAUSE OF ACTION- CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS (Entity liability against Defendant City of New York)

33. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 32 of this Complaint with the same force and effect as though fully set forth herein.

34. On information and belief, responsible officials of the City of New York maintained customs, policies, and practices regarding the supervision and/or training of NYPD officers that led to the deprivations of the Plaintiff's Fourth Amendment rights as alleged herein.

35. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train NYPD officers effectively so as to prevent them from engaging in humiliating and demeaning behavior towards individuals being searched incident to automobile stops, the obvious consequence would be that some officers would nonetheless engage in such conduct for various reasons other than to achieve justice in accordance with the law, such as to intimidate those individuals into confessing regardless of their actual guilt.

36. In light of the above, responsible officials of Defendant City of New York knew to a moral certainty that NYPD officers would frequently confront situations in which there were powerful incentives to engage in humiliating and demeaning behavior towards individuals they pull over during automobile stops.

37. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to engage in humiliating and demeaning behavior towards individuals they pull over during automobile stops, if those officers were properly supervised and disciplined they would almost always be deterred from such behavior due to the understanding that they would be held liable if they do so, and if those officers

were properly trained, they would be fully aware of (A) the proper procedures for conducting a search incident to an automobile stop, (B) their responsibilities under the law to ensure that they respect the privacy and dignity of individuals that they are searching, and (C) the consequences they would face for conducting searches that wrongfully humiliate or demean such individuals.

38. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers engaging in humiliating and demeaning behavior towards individuals pulled over during automobile stops would be the deprivation of the Fourth Amendment rights of those individuals to be free of excessive and unreasonable searches.

39. In light of fact that the responsible officials of Defendant City of New York knew or should have known that if they failed to supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by engaging in humiliating and demeaning behavior during searches, the obvious consequence would be that some officers would nevertheless engage in such behavior, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiff and other individuals who were subjected to humiliating and demeaning behavior during searches.

40. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, Plaintiff experienced an extreme degree of degradation, anxiety, and discomfort, and continues to experience great mental anguish, emotional distress, and post-traumatic stress.

41. As a result of the foregoing, Plaintiff sustained the damages previously described, and seeks compensatory damages from the City of New York.

WHEREFORE the Plaintiffs demand judgment against Rogozinski in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages on the first cause of action, and against the City of New York in the amount of One Million Dollars ($1,000,000.00) in compensatory damages on the second cause of action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York
April 30, 2013

Respectfully submitted,

LEBOW & ASSOCIATES, PLLC

*/s/ James B. LeBow*

_____

James B. LeBow, Esq. (JL4535)
570 Lexington Avenue, 16th Floor
New York, New York 10022
Tel. (212) 868-3311
Fax (646) 619-4555